UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DOUGLAS L. CUMMINS,

     Plaintiff,

v.                                                    Civil Action No. 2:14cv165

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

     Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Douglas L. Cummins ("Cummins" or "Claimant") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act. Specifically, Cummins claims the ALJ improperly weighed the medical opinion of a treating physician, improperly assessed his credibility, and erred in evaluating the testimony of a Vocational Expert ("VE"). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this report recommends that the final decision of the Commissioner be affirmed.

## I.    PROCEDURAL BACKGROUND

Cummins filed an application for DIB, alleging disability beginning March 31, 2011. (R. 114). The Commissioner denied his application initially (R. 73), and upon reconsideration. (R. 82). Cummins requested an administrative hearing, which was conducted on December 10, 2012. (R. 23-39).

1

An Administrative Law Judge ("ALJ") concluded that Cummins was not disabled within the meaning of the Social Security Act, and denied his claim for benefits. (R. 10-19). The Appeals Council denied review of the ALJ's decision (R. 1-3), thereby making the ALJ's decision the final decision of the Commissioner. Cummins then filed this action seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II.   FACTUAL BACKGROUND

Born in 1959, Cummins completed the tenth grade, and was 51 years old at the time of the alleged onset. (R. 28). Prior to his alleged onset of disability, Cummins had a long career as a pump station mechanic for the City of Chesapeake. (R. 30-37; 155). He last worked fulltime in 2011, when he retired from the City due to his disability. (R. 154).

Cummins' long history of back pain dates back to 1998. (R. 33). Though all of the records are not available, those in the file confirm that Cummins has had four back surgeries, the most recent in November 2009 for decompression of a herniated disc. (R. 236; 249). He treated his back condition primarily through two treating physicians with whom he consulted throughout the relevant time period.

David G. Goss, M.D. is the orthopaedic surgeon who performed Cummins' two most recent surgeries. In June, 2009, he had a decompression fusion at L5-S1. He returned to work following that surgery and heavy lifting resulted in a new injury at L4-L5. (R. 236). Following his work-related injury, Cummins received a CAT scan and saw Dr. Goss on October 16, 2009. (R. 228). The scan revealed moderate disc herniation causing moderate canal stenosis. Dr. Goss described this as an acute injury and discussed surgical options and Cummins elected to proceed. (R. 228). Dr. Goss continued to follow Cummins after his November 2009 surgery, and in

2

March 2010 released him to return to work fulltime but limited his lifting to no more than 20 lbs. (R. 236). After returning to work, Cummins continued to experience back pain, but Dr. Goss noted that Cummins' pain relievers and modified physical activities generally managed his symptoms. (R. 234). Cummins underwent a functional capacity evaluation at Dr. Goss' request. For some reason the results of the evaluation are not available in the record, but Dr. Goss reviewed them with Cummins at a September 2010 office visit and provided him with a copy. At this time, Dr. Goss noted that the evaluation "clearly states his ability to participate in a medium – heavy physical demand level." (R. 232). On that same visit, Dr. Goss opined that Cummins had reached maximum medical improvement.   He indicated that if Cummins experiences future pain at a different level – L3-L4 for example, that may indicate the need for fusion.  But, if further surgery was not contemplated, Dr. Goss directed that Cummins consult with a pain management specialist and return to Dr. Goss as needed. (R. 232).

Shortly thereafter, Cummins consulted Beth M. Winke, M.D., a pain management specialist whom he began seeing October 15, 2010 on referral by Dr. Goss.  He described his surgical history, and history of back pain radiating to his left hip down to his ankle.  At the time he described working light duty with the City of Chesapeake and stated that his symptoms increased with bending and lifting as well as standing, walking, twisting, driving, climbing or vibrations.  He described his previous therapies, including epidural injections, physical therapy and weight loss.  During his physical examination Cummins was well developed and well nourished, he had a bright affect and pleasant personality.  He moved "functionally throughout the room" with an upright posture. (R. 247).  She noted "a small trigger point palpable on the left side at L5, which reproduces some of his symptoms." (R. 247).  Dr. Winke diagnosed chronic ongoing back pain with left leg radiculopathy.  She requested x-rays of his hip and

adjusted his medication prescribing Percocet, Neurontin and a Flector patch and directed a follow-up in two weeks. (R. 246-48).

Cummins continued to see Dr. Winke and adjust medications in October and November, 2010. (R. 244-245). On December 27, 2010, Cummins returned to Dr. Winke with his workers' compensation case manager. He stated that the combination of medications was working well for him. (R. 243). But in January 2011, he returned stating that his Neurontin did not seem to be helping and requesting to taper it off. During this visit he stated that he would only have his job a few more weeks. (R. 242). On this visit, Cummins' physical exam appeared unchanged. He described his pain as 6 to 7 out of 10; but 8 out of 10 after driving, and 4 to 5 out of 10 after his medication. (R. 242). In February Cummins returned to Dr. Winke stating that his pain was perhaps a little worse, but no new complaints. He stated that he had run out of medication that month and his Percocet prescription was renewed.

In March 2011, the month of Cummins' alleged onset date, he returned to Dr. Winke advising that his medication had been controlling his pain just long enough for him to remain doing light duty work, not his former position as a pump mechanic. (R. 240). His physical examination of that date disclosed a flattening of the normal lumbar curve and tenderness on the left lumbar region. Dr. Winke again diagnosed back pain related to his previous lumbar surgeries. (R. 240).

Throughout the remainder of 2011, Cummins continued to consult with Dr. Winke and other providers in her practice. These visits generally reflected Cummins' continued complaints of low back pain, sometimes radiating to his hip and left leg. Dr. Winke continued to manage Cummins' back pain by prescribing medications, including Flexeril and Percocet. (R. 312, 316, 320, 324, 328). Cummins also occasionally described participating in vocational rehabilitation.

4

(R. 321, 333).  On October 27, 2011, Cummins reported to Dr. Winke that his pain was getting worse.  He had seen Dr. Goss who had ordered an MRI.  He was still looking for work.  (R. 317).  When he returned on December 21, 2011, he reported that the MRI revealed a new disc bulge protrusion at L4-5, but surgery was not recommended.  (R. 313-314).  In January 2012, Cummins underwent two Depomedrol injections of his lumbar spine for pain relief.  He reported complete but transient pain relief following each injection.  During his visit on February 16, 2012, he stated that his aching pain seemed a bit better and the Percocet was more effective since the injection. (R. 294-97).

Although Cummins continually reported sharp pain in his lower back radiating to his legs, his physical examination generally revealed a normal posture and body mechanics.  He ambulated normally and without an assistive device or limp.  (R. 314, 318, 322, 325, 337).  His exam generally revealed low back tenderness and a limited range of motion, but 5/5 strength in all tested areas.  He was generally observed to be neurologically intact with normal reflex and sensation. (R. 322, 326, 330, 334).

In June 2012, Cummins returned to Dr. Goss for follow-up on his back pain.  On examination at that time, Dr. Goss reported that his gait, muscle tone and strength were all normal.  (R. 269).  He ordered an MRI and restricted him to lifting no more than 25 lbs.  (R. 269).  Dr. Goss reviewed the MRI with Cummins in August 2012.  He noted that the tests revealed post-operative changes, but no stenosis or acute lesions.  He described the MRI as "benign." (R. 265).  He suggested that Cummins continue working with Dr. Winke and within the previously-identified work restrictions, involving lifting up to 25 lbs. (R. 266).

In November 2012, Dr. Winke completed a "Medical Evaluation Report" and "Physical Capacities Assessment" purporting to outline Cummins' limitations at the request of his attorney.

(R. 340-42).  The two check-the-box evaluations reflected that Cummins could only sit for one hour during an eight hour work day and could stand or walk for only one hour during an eight hour work day, lift only up to five pounds on an occasional basis and could not repetitively use arm controls, leg controls or perform fine manipulation.  Dr. Winke also checked boxes indicating that Cummins would be totally restricted from unprotected heights, moving machinery, temperature and humidity extremes or dust, fumes and gases.  (R. 341-42).   In addition, Dr. Winke checked blanks indicating Cummins' pain would affect his concentration and memory and would require him to take additional breaks.  She indicated that he would require bed rests and be unable to report to work six to eight days per month.  (R. 340).  Asked to describe the "clinical observations, findings and test results" supporting her opinion, Dr. Winke wrote, "The patient states that his current symptoms increase with bending, and lifting" and other types of activity.  (R. 340).

In addition to his treating physicians, Cummins' record includes evaluations by two agency doctors, Dr. Leopold Moreno and Dr. Carolina Longa.  The state agency physicians who evaluated Cummins' records in August and September 2011 essentially agreed with one another that Cummins retained the ability to occasionally lift and carry up to 20 lbs., frequently lift and carry up to 10 lbs., stand and walk six hours in an eight hour work day and sit for six hours in an eight hour work day.  Dr. Moreno wrote that Cummins could frequently climb ramps and stairs but could not climb ladders, ropes or scaffolds and only occasionally stoop, kneel, crouch or crawl.  Dr. Longa agreed with Dr. Moreno's assessment but added that Cummins should also avoid concentrated exposure to hazards due to his pain medication.  (Moreno R. 44-45; Longa R. 55-57).

At the hearing, Cummins' testimony was brief.  He described his current part-time

employment which involved driving vehicles for a rental car company. Each trip was approximately 250 miles and after driving, Cummins would return in a van with other employees. (R. 29). He stated that he was supposed to occasionally drive back but usually avoided doing so as a result of his medication. (R. 29-30). On non-work days he first described just "piddling around." (R. 29). On examination by his attorney, however, Cummins stated that he sometimes had to spend the day in bed, getting up only to eat. (R. 32). He described watching TV, doing light shopping and preparing simple meals, but said that his adult son helped with home and vehicle maintenance. (R. 32-34). Cummins said he sometimes had to take breaks in order to finish simple tasks, like doing the dishes. (R. 33).

In addition to Cummins' testimony, the ALJ also examined a Vocational Expert ("VE"). The VE first characterized Cummins' past work as a pump mechanic as skilled work at the medium exertion level. (R. 37). She testified there were no skills from the pump mechanic position which would transfer to sedentary work. Next, in response to a hypothetical framed by the ALJ, she considered the jobs available for an individual with the same age, education and work history as Cummins who was capable of light work, frequent ramps and stairs, but no ladders, ropes, scaffolds, and only occasional stooping, kneeling, crouching, crawling or exposure to heights and hazards. The VE identified unskilled light jobs which would comport with the hypothetical, including that of a machine operator and rental clerk, both of which had over 100,000 jobs in the national economy. The VE also testified that employers would customarily tolerate no more than one to two unscheduled absences from work each month, and no more than two regular breaks in addition to the lunch break for fulltime work. (R. 38). Finally, the VE testified that all of her testimony was consistent with the <u>Dictionary of Occupational Titles</u> ("DOT"). (R. 38).

7

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance.  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390.  Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### IV.   ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status

requirements of these sections, be under age sixty-five, file an application for disability insurance

benefits and a period of disability, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as the:

> Inability to do any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can
> be expected to result in death or which has lasted or can be expected
> to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this

definition, a claimant must have a "severe impairment" which makes it impossible to do previous

work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. §

404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all

material facts will be considered in determining whether a claimant has a disability. The

Commissioner follows a five-step sequential analysis to ascertain whether the claimant is

disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments
   which significantly limit his or her physical or mental ability to do the work
   activities?

3. Does the individual suffer from an impairment or impairments which meet or equal
   those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or
   "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing
   his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any
   other work?

An affirmative answer to question one, or a negative answer to question two or four,

results in a determination of no disability. An affirmative answer to question three or five

9

establishes disability.  This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920.  The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)).  At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

A.     **The ALJ's Decision**

In this case, after first finding that Cummins met the insured status requirements of the Social Security Act through December 31, 2015, the ALJ made the following findings under the five part analysis: (1) Although Cummins had worked recently, his work had not amounted to substantial gainful activity since his alleged onset date of March 31, 2011; (2) he had a severe impairment of degenerative disc disease of the spine; (3) he did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in Appendix 1; (4) Cummins was unable to perform his past relevant work, but did have the RFC to perform a modified range of light work in work activities that allow him to avoid climbing ropes or ladders and scaffolds with only occasional kneeling, crawling, stooping and exposure to hazards; and (5) considering Cummins' age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Cummins can perform. (R. 13-19).

10

Cummins now argues the ALJ erred in determining his RFC and finding him not disabled. Specifically, he claims the ALJ: (1) improperly evaluated the medical evidence and (2) did not support with substantial evidence his finding that Cummins' testimony was "not entirely credible." Additionally, Cummins argues that the ALJ improperly evaluated the evidence provided by the VE. The Court considers each argument below.

**B.** **The ALJ properly evaluated the evidence bearing on Cummins' RFC.**

Cummins contends that the ALJ erred in determining his RFC, which is defined as the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. § 404.1545(a)(1); see SSR 96-9p, 1996 WL 374185 (S.S.A.) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must then determine the plaintiff's RFC. 20 C.F.R. § 404.1520(e). After doing so, the ALJ uses that RFC at step four of the sequential analysis to determine whether the plaintiff can perform his past relevant work. Id. § 404.1545(a)(5)(i). If it is determined that the plaintiff cannot perform past relevant work, the ALJ uses the RFC at step five to determine if the plaintiff can make an adjustment to any other work that exists in the national economy. Id. § 404.1545(a)(5)(ii).

At the administrative hearing level, the ALJ alone has the responsibility of determining RFC. Id. § 1546(c). RFC is determined by considering all the relevant medical and other evidence[1] in the record. Id. §§ 404.1545(a)(3), 404.1527(b). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an

---

[1] "Other evidence" includes statements or reports from the claimant, the claimant's treating or non-treating source, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529(a).

individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184,

at *2 (S.S.A.). In this case, the ALJ found that Cummins has the RFC to perform light work with

added limitations on exposure to heights and hazards, and postural limitations related to his back

pain.

### 1. The ALJ properly explained the weight assigned to all medical source statements.

Cummins first contends that the ALJ erred by improperly considering and evaluating the

evidence, including specifically the medical source statement submitted by one of his treating

physicians, Dr. Winke. (ECF No. 9 at 23-25). Specifically, Cummins contends the ALJ

improperly discounted Dr. Winke's November 2012 statement which suggested that Cummins

would be incapable of fulltime work due to his need for frequent rest breaks and unscheduled

absences.

As stated previously, the ALJ alone has the responsibility of determining RFC. In doing

so, the ALJ must consider the objective medical evidence in the record, including the medical

opinions of the treating physicians and the non-examining medical consultants. In assigning

weight to any medical opinion, the ALJ must consider the following factors: (1) "[l]ength of

treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of

"supporting explanations for their opinions;" (4) consistency with the record; and (5) the

specialization of the physician. 20 C.F.R. § 404.1527.

Generally, the opinion of a treating physician is given more weight than that of a non-

treating or non-examining medical source. Id. § 404.1527(c)(1)-(2). A treating physician's

opinion merits "controlling weight" if the opinion is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case record." Id. § 404.1527(c)(2). Conversely, "if a physician's opinion is not

12

supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

Because the regulations require the ALJ to evaluate every medical opinion, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in [the regulations]." SSR 96-2P, 1996 WL 374188, at *5 (S.S.A.).   When the ALJ determines that the treating physician's opinion should not be given controlling weight, the ALJ must articulate "good reasons" for his decision. Id. § 404.1527(c)(2).[2]

The medical evidence in this case was uncomplicated.   Cummins suffers from chronic back pain which he has regularly treated through two providers, Dr. Goss and Dr. Winke.  Both Dr. Goss and Dr. Winke are treating physicians and the ALJ's opinion properly analyzed their treatment records and explained the weight he assigned to them. He gave "significant weight" to Dr. Goss' opinion limiting Cummins to lifting no more than 25 lbs. because it was more consistent with the evidence in the record as a whole.  (R. 17).  He noted that Cummins' last surgery was in 2009, and that his functional capacities evaluation suggested he is capable of medium work.   Conversely, the ALJ gave Dr. Winke's Medical Evaluation Report only slight weight because it was inconsistent with Cummins' treatment record and based primarily on his subjective complaints.  (R. 17).

Cummins challenges the rationale applied by the ALJ, arguing that the reasons reported in his decision do not constitute substantial evidence to discount Dr. Winke's opinion.  He claims the ALJ should not have rejected the opinion because it was based on Cummins' subjective complaints, as patient complaints are a primary means of diagnosing pain.  He also argues that

---

[2] In fact, under the applicable regulations, the ALJ is required to "explain" in his decision the weight accorded to all opinions – treating sources, nontreating sources, state agency consultants, and other nonexamining sources. 20 C.F.R. § 404.1527(e)(2)(ii).

13

the inconsistent records which appear in Dr. Winke's treatment notes relate to conditions other than Cummins' disabling back pain, and thus, are not inconsistent with her opinion. After reviewing the records, the ALJ's opinion, and the other medical evidence in the record, the undersigned finds that the ALJ properly explained the weight he assigned to the medical evidence and his opinion is supported by substantial evidence.

To begin with, the statement Cummins relies upon is not a medical record prepared as part of Dr. Winke's treatment, but a check-the-box form prepared solely to support his claim of disability. It contains no space for elaboration on the reasons for Cummins' claimed limitations. Such check-the-box forms, unaccompanied by explanations are weak evidence at best, and not entitled to great weight even when completed by a treating physician. McConnell v. Colvin, 2:12cv5, 2013 WL 1197091, at *6 (W.D. Va. Mar. 25, 2013) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)).

Here, as the ALJ noted, Cummins' actual medical records document a history of chronic, but manageable lower back pain. His most recent surgery was two years before his alleged onset date, and in the intervening months he maintained his light-duty employment with the City of Chesapeake. After retiring, he was still able to work, albeit part-time ferrying rental cars 250 miles in a single day. More importantly, his physical exams by both Dr. Winke and Dr. Goss revealed little to support the work-disabling limitations described in Dr. Winke's Medical Evaluation Report. He had a normal gait, 5/5 muscle strength, normal reflexes and an upright posture. While his exam also revealed lower back tenderness and a limited range of motion, these symptoms, as well as his reports of back pain, are accommodated by his restriction to light work with significant additional postural limitations.

Importantly, the ALJ did not substitute his own opinion for that of the treating physicians

14

nor did he rely exclusively on the reports of non-examining DDS physicians to evaluate the medical evidence. Instead, he relied on the opinion of Cummins' other treating physician, Dr. Goss. As Cummins admits, Dr. Goss, who was the surgeon who performed his most recent surgeries and continued to follow his complaints of back pain thereafter, did not believe that Cummins was disabled from all work. (R. 266-69). Cummins has tried to argue that Dr. Goss' opinion is less useful because Cummins had decided to forego surgery and pursue medical pain management through Dr. Winke, but this argument is contradicted by the record. Cummins continued to see Dr. Goss while simultaneously pursuing medication management. He returned to Dr. Goss in June 2012, and both an x-ray and MRI ordered by Dr. Goss revealed no changes since his previous surgery. Dr. Goss described the MRI as "benign," and continued Cummins' previous work restrictions involving lifting no more than 25 lbs. This visit and Dr. Goss' opinion appear in the record just a few months before Dr. Winke's Medical Evaluation Report. In rejecting the latter, the ALJ specifically relied on Dr. Goss' medical evaluation, including his review of the MRI and x-ray, and his conclusions regarding Cummins' abilities. (R. 16, 266-69).

By contrast Dr. Winke provided only cursory explanations for her findings in the Medical Evaluation Report. Most of the four-page document consists of checkmarks acknowledging a list of work-limiting functions. (R. 340-42). When asked to identify the "clinical observations, findings and test results supporting her opinion, Dr. Winke wrote, "The patient states his current symptoms worsen with" exertion and vibrations. Moreover, as discussed previously, Dr. Winke's own examinations provide little to support her statement that he could sit no more than one hour per day, or that he would be off task as a result of his pain on a daily basis. As the ALJ also noted, at the time Dr. Winke completed the evaluation Cummins was working, driving a vehicle by himself for 250 miles each day. Under these circumstances, the ALJ's carefully-

explained decision to afford Dr. Winke's statement on disability little weight is supported by substantial evidence.

Cummins also criticizes the ALJ's decision to give significant weight to the opinions of Dr. Longa and Dr. Moreno.   According to Cummins, these non-examining DDS medical consultants evaluated Cummins in 2011, before much of his treatment with Dr. Winke. Cummins complains that the ALJ did not give an explanation for relying on the opinion of these non-examining DDS consultants other than it was consistent with the record. (ECF No. 25).  But consistency with the record is a reason to afford the opinions some weight.  Moreover, the ALJ also relied on a contemporaneous and later opinion from Cummins' treating orthopaedic surgeon, Dr. Goss.  Accordingly, the undersigned finds no error in the weight assigned to the agency physician's statements.

A claimant's RFC is determined by considering all the relevant medical and other evidence in the record and the weight assigned to an opinion is in part determined by how consistent it is with the medical record.  "Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs," the ALJ is required to consider their factual determinations about the "nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists." SSR 96-6p. While the ALJ is not bound by these findings, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Id. The opinion of a non-examining, non-treating physician, in turn, can be relied upon when the opinion is consistent with the record. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Additionally, "[w]hen the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are

16

consistent with each other, then the ALJ makes a determination based on that evidence." Armentrout v. Astrue, 3:10CV504, 2011 WL 4625931, at *4 (E.D. Va. June 2, 2011), report and recommendation adopted, 3:10CV504, 2011 WL 4625912 (E.D. Va. Oct. 3, 2011).

Here, the ALJ gave both DDS opinions "significant weight" because "they were consistent with the evidence of record as a whole." (R. 17). Both DDS physicians concluded that Cummins was capable of light work. While Cummins correctly points out that the specialists' record review occurred before much of Dr. Winke's treatment, there is nothing in her subsequent treatment record which undermines the ALJ's analysis. In addition, both DDS opinions remain consistent with the opinion of Cummins' other treating physician, Dr. Goss, who last saw Cummins in 2012, just a few months before the hearing. Finally, Cummins had reported no new injury or surgery since his last fusion of 2009, two years before the DDS review.

Thus, it is clear that the ALJ considered all of the medical evidence, and properly explained the weight afforded this evidence. Importantly, other than Dr. Winke's specially-prepared Medical Evaluation Form, Cummins points to no medical evidence, objective or otherwise, that suggests exertional limitations greater than those imposed by his light RFC with the additional limitations outlined above.

### 2. The ALJ correctly evaluated Cummins' complaints of pain.

Cummins next argues that the ALJ erred in finding his complaints of disabling limitations inconsistent with the medical record. (ECF No. 9, at 25-27). The ALJ specifically found that, while Cummins' medically determinable impairments could reasonably be expected to cause the symptoms alleged, Cummins' own statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 14).

In deciding whether a plaintiff is disabled, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 404.1529(a). A plaintiff's subjective statements about pain or other symptoms alone are not enough to establish disability. Id. Under both federal regulations and Fourth Circuit precedent, determining whether a person is disabled by pain or other symptoms is a two-step process. First, the plaintiff must satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594-95. "However, while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" Craig, 76 F.3d at 592-93 (quoting Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986)).

After the plaintiff has satisfied the first step, the ALJ must evaluate the intensity and persistence of the plaintiff's symptoms and the extent to which they affect his ability to work. 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the plaintiff's history, including his own statements, id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," id. § 404.1529(c)(2); and (3) other evidence submitted by the plaintiff relevant to the severity of the impairment such as evidence of daily activities, medical treatments and medications, and descriptions of the pain or other symptoms, id. § 404.1529(c)(3).

In evaluating the intensity and persistence of the plaintiff's symptoms and the extent to which they affect his ability to work, the ALJ must consider whether inconsistencies exist and

the extent to which there is conflict between the plaintiff's statements and the other evidence. Id. § 404.1529(c)(4). According to the regulations, a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id.

Although Cummins satisfied his initial burden under the two-step inquiry set forth in the regulations and adopted by the Fourth Circuit, the ALJ found that Cummins' own statements regarding the "intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (R. 14). In so finding, the ALJ considered the entire record and documented his review in detail in the opinion. He specifically observed that Cummins' had maintained part-time employment, which indicated that his daily activities were, at times, greater than he reported. (R. 14). More importantly, he reviewed the medical records from both Dr. Goss and Dr. Winke, which included consistent notations of 5/5 muscle strength, a normal gait and posture, and no problems with ambulation. (R. 14-15). He noted that Cummins' most recent surgery was in 2009, three years before the ALJ's decision, and that his treating orthopaedic surgeon had released him to medium work. (R. 16). Based on all of this evidence, which the ALJ recited in his decision, his decision to find Cummins' self-report of disabling pain only partially credible is supported by substantial evidence. In so holding, the ALJ complied with both the regulations and Fourth Circuit precedent in evaluating Cummins' testimony.

To the extent Cummins contends that the ALJ erred in evaluating his credibility, the Court must give great deference to the ALJ's credibility determinations. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional

circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). The Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). Here, the ALJ performed the required analysis and articulated a number of reasons for not fully crediting Cummins' statements. There is ample objective evidence in the Record to contradict Cummins' self-report of disabling limitations and to support the ALJ's credibility determination. Accordingly, the Court finds the ALJ properly evaluated Cummins' credibility.

**C.      The hypothetical presented to the VE and Cummins' RFC adequately reflected the limitations found by the ALJ.**

Cummins' next argument relates to the limitations described in the ALJ's hypothetical to the VE.  In reaching his decision that Cummins was capable of performing work in the national economy, the ALJ relied on the VE's testimony in response to a hypothetical question.  When relying on VE testimony based on hypothetical questions, the hypotheticals posed must account for all of the claimant's limitations as shown by the record.  Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).  If limitations are omitted, the VE's testimony is of limited value, and may not constitute substantial evidence.  See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (citing Walker, 889 F.2d at 50).  Failing to consider limitations shown by the evidence, and then relying upon the errant hypothetical to form an opinion about the availability of work suitable to the claimant is error.  Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D. Va. 2002). Cummins claims the ALJ erred by concluding that Cummins could perform light work without having to take regular unscheduled breaks during the work day to relieve his pain.  He argues

that Dr. Winke's Medical Evaluation Report stated Cummins would require extra rest breaks exceeding one hour in each eight hour work day. (R. 340). If this evidence were credited and the restriction included in the hypothetical, Cummins could not perform either of the positions identified by the VE.   After reviewing the VE's testimony and Cummins' arguments, the undersigned finds no error in the ALJ's analysis.

On examining the VE, the ALJ first asked him to characterize Cummins' past work, which she characterized as medium, skilled work. (R. 37). Next, the ALJ crafted a hypothetical including Cummins' age, education and past experience and all of the limitations he later imposed in his RFC.  The ALJ asked whether such a person could perform any work.  In response to this question, the VE offered two unskilled, light positions which such an individual could perform: machine operator with 170,000 positions nationally and rental clerk with 435,000 jobs nationally.  (R. 37-38).  The ALJ also asked if a need for excessive rest breaks or unscheduled absences would preclude work, and the VE testified that it would. The ALJ's RFC did not impose a restriction involving extra work breaks or unscheduled absences, and relied on the hypothetical and the VE's testimony in concluding work was available to Cummins. (R. 13-14).

The ALJ's RFC and hypothetical adequately reflect the limitations he imposed, and those limitations sufficiently accommodate Cummins' impairments.  The only medical evidence suggesting Cummins would require extensive breaks or unscheduled absences came from Dr. Winke's Medical Evaluation Report, prepared at the request of Cummins' counsel. As set forth above, the ALJ explained the reasons why he gave this opinion only slight weight. In addition, Cummins' part-time job and evidence from his treating orthopaedist constitute substantial

evidence to support the hypothetical as presented.  Accordingly, the undersigned finds no error of law in the ALJ's use of the VE's testimony.

## V.    **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the Court GRANT the Commissioner's motion for summary judgment (ECF No. 10), DENY Cummins' motion for summary judgment (ECF No. 8), and affirm the final decision of the Commissioner.

## VI.    **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of filing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
November 7, 2014

22